UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00058-GNS-HBB

STEPHANIE JONES & JOHN "JD" JONES                                          PLAINTIFFS

v.

JOHN CARNES d/b/a
CARNES CONSTRUCTION COMPANY                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Motion for Partial Summary Judgment filed by Defendant John Carnes d/b/a Carnes Construction Company ("Carnes") (DN 11). The Court jointly rules on Motion for Summary Judgment filed by Plaintiffs Stephanie and John Jones (the "Joneses") (DN 12). The motions have been fully briefed and are ripe for decision. For the reasons stated below, the Court **GRANTS** Carnes's Motion and **DENIES** the Joneses' Motion.

### I.     BACKGROUND

This action is brought under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, by Plaintiffs to rescind contracts for renovations and repairs made to the Plaintiffs' home by Defendant. Plaintiffs seek to rescind three contracts dated April 5, 2013, April 20, 2013, and October 18, 2013. (Pls.' Mem. in Supp. of Mot. for Entry of Summ. J. 1, DN 12-1 [hereinafter Pls.' Mot. for Summ. J.]).

The work began after a March 24, 2013, storm that caused extensive damage to the Plaintiffs' roof. (Pls.' Mot. for Summ. J. 2). Plaintiffs made the April 2013 agreements with Defendant, and Defendant was paid $17,704.75. (Pls.' Mot. for Summ. J. 1). Plaintiffs were

satisfied with the work and subsequently entered into an October 18, 2013 agreement with Defendant for renovations to Plaintiffs' home. (Pls.' Mot. for Summ. J. 3). All contracts provided that Plaintiffs would pay the difference between the insurance coverage and Defendant's costs. (Def.'s Resp. to Pls.' Mot. for Summ. J. DN 13 [hereinafter Def.'s Resp.]; Def.'s Resp. Ex. 2, at 1, DN 13-1; Def.'s Resp. Ex. 3, at 1, DN 13-2; Def.'s Resp. Ex. 4, at 1, DN 13-3).

Defendant made a series of improvements to the home over the following months, but during the course of the work additional storms caused water damage to the home's interior and exterior. (Pls.' Mot. for Summ. J. 3). Plaintiffs hired a new contractor who informed Plaintiffs that Carnes's work on the home was defective. (Pls.' Mot. for Summ. J. 3). Plaintiffs sent a rescission letter to the Defendant and tendered back building materials. (Pls.' Mot. for Summ. J. 4). Plaintiffs informed Defendant of their desire to rescind the three construction contracts and gave Defendant the option to remove the roof or alternatively retain the sum of $6,000 in full payment for his work. (Pls. Mot. for Summ. J. 4). In response, Defendant filed a mechanic's and materialman's lien against Plaintiffs' home. (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J 22, DN 11-1 [hereinafter Def.'s Mot. for Partial Summ. J.].

Plaintiffs filed their Complaint on April 29, 2015. (Compl., DN 1). Defendant filed its Answer and Counter-Claim on June 9, 2015. (Answer & Countercl., DN 5). Defendant filed its Motion for Partial Summary Judgment on September 4, 2015. (Def.'s Mot. for Partial Summ. J). Plaintiffs filed their Motion for Summary Judgment or Alternative Motion for Declaratory Judgment on September 4, 2015. (Pls.' Mot. for Summ. J.).

## II.     JURISDICTION

The Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States, namely TILA.

## III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ." *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'" *Id*. (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, the non-moving party must present facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Plaintiffs' right to rescind the contracts under TILA depends on whether Defendant constitutes a "creditor" under that law. If Carnes were a "creditor," then he would subject to TILA and would be obligated to return all money received under the contracts. 15 U.S.C § 1635(b). Under TILA, a creditor is defined as "a person who . . . regularly extends, . . . in connection with . . . sales of property or services, . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required . . . . " 15 U.S.C. § 1602(g).

The Sixth Circuit has held that "a credit transaction which requires disclosures under [TILA] is completed when the lender and borrower contract for the extension of credit." *Wachtel v. West*, 476 F.2d 1062, 1065 (6th Cir. 1973) (alteration in original). TILA is traditionally meant to be construed liberally in favor of consumers. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984). On the other hand, the purpose of the disclosure provision of TILA is relatively narrow. *See Wachtel*, 476 F.2d at 1065 ("The purpose of disclosure is clearly to give the borrower an opportunity to do some comparative shopping for credit terms.").

In this case, Plaintiffs argue that Carnes is a "creditor" as defined by TILA because Defendant has "regularly extended consumer credit" including to the Joneses in this case.[1] (Pls.' Mot. for Summ. J. 9). Plaintiffs admit, however, they have not shown that Defendant has

---

[1] "A person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of § 1026.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year." 12 C.F.R § 1026.2(a)(17)(v). Therefore, in order to be a "creditor" under TILA, the Joneses must show that Carnes extended credit secured by a dwelling more than five times in the last year.

4

engaged in other transactions similar to those in this case. (Pls.' Resp. to Def.'s Mot. for Partial Summ. J. 4, DN 14 [hereinafter Pls.' Resp.]).

The Court finds that Defendant is not a creditor for the purposes of TILA. While the parties disagree whether a "payment schedule" existed in the agreement, the face of all three agreements indicates some form of general payment schedule was present, but these schedules did not amount to extensions of credit.[2] (Def.'s Resp. Ex. 2, at 1; Def.'s Resp. Ex. 3, at 1; Def.'s Resp. Ex. 4, at 1). Rather, the agreements anticipated the receipt of insurance payments at the commencement of construction, with any costs not covered by insurance to be paid as the work was completed. Defendant did not loan money to Plaintiffs; rather, these payments were for work performed. The April agreements indicate payments were made in at least three separate payments, whereas the October agreement implies previous payments were made.[3] Thus, the question is whether these separate payments constitute "installment payments" under TILA. The Court finds they do not.

Progress payments do not amount to an extension of credit under TILA. *Lukas v. Lucci Ltd., Inc.*, 966 F. Supp. 1163, 1165 (S.D. Fla. 1997) (finding contractor's partial payment plan which allowed multiple payments over the course of a project did not cause contractor to become a "creditor" under TILA). The construction project in this case involved multiple constituent parts, separately billed and payable throughout the progress of the project. The contracts show that payment was for separate types of work and the "payment schedule" appears to trace the

---

[2] "Payment Schedule: 1) Deductible check upon specification 2) First insurance draft or equal sum due upon specification signing 3) Final draft due upon completion to include applicable overhead and profit, supplements, and upgrade." (Def.'s Resp. Ex. 2, at 1; Def.'s Resp. Ex. 3, at 1; Def.'s Resp. Ex. 4, at 1).

[3] The April agreements indicate two payments were to be made on March 6, 2013, and April 30, 2013, and another was to be made on June 11, 2013. (Def.'s Resp. Ex. 2, at 1; Def.'s Resp. Ex. 3, at 1). The October agreement only provides for one payment of roughly $14,000. (Def.'s Resp. Ex. 4, at 1).

progress of the work, as well as the receipt of insurance payments. (Def.'s Resp. Ex. 2, at 1; Def.'s Resp. Ex. 3, at 1; Def.'s Resp. Ex. 4, at 1).

Moreover, a payment may be made at the beginning of the contract with the remainder paid upon completion without being an installment contract under TILA. *Lukas*, 966 F. Supp. at 1165 (citation omitted). The agreement between the parties also indicates that an extension of credit was never contemplated as the Plaintiffs' insurance was to make up the payment throughout the project and any remainder was to be paid when insurance payments could no longer cover costs. (Def.'s Resp. Ex. 2, at 1; Def.'s Resp. Ex. 3, at 1; Def.'s Resp. Ex. 4, at 1). The only reasonable interpretation of the agreement is either payment was to be made in multiple parts throughout the progress of the project, or payment was to be made in multiple parts from insurance proceeds at the beginning of the project, with the difference to be paid as the work was completed.

The parties disagree whether a payment schedule in fact existed or if the difference between insurance payments and construction costs was to be paid at the end of project. The Joneses claim the agreement consisted of "eight installments" from April to September 2013. (S. Jones Aff. ¶ 2, DN 12-2). Carnes contends the agreement was structured to receive payment from the insurance company up front, with any difference between coverage and costs to be received at the completion of work. (Carnes Aff. ¶¶ 3-4, DN 11-3). Either way, the payments under the contracts in this case do not constitute "installment payments" under TILA. *Lukas*, 966 F. Supp. at 1165 (citation omitted) (finding neither multiple payments made through the course of project, nor lump sum payment paid at the beginning of construction with difference paid at conclusion of construction constitute an installment payment under TILA). Holding otherwise would make virtually every contractor a "creditor," as every construction contract involving progress

6

payments or a split payment schedule would be subject to TILA. Plaintiffs argue TILA should apply to all contractors who engage in transactions with multiple payments, but cite no case law which supports this argument. (Pls.' Mot. for Summ. J. 10-11).

Further, the Joneses admit they are unable to show Carnes has engaged in transactions similar to those in this action with other customers. (Pls.' Resp. 14). Therefore, even to the extent the contracts in this case could be considered to include installments under TILA, Plaintiffs are unable to prove Defendant engaged in similar transactions as required by TILA.[4] Similarly, Plaintiffs' argument regarding the applicability of *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980), to Defendant's mechanic's lien are misguided. *Rudisell* involved a clear extension of credit by a creditor bank. *Rudisell*, 622 F.2d 243, 245. Since the Court finds Defendant is not a creditor, this case is not controlling.

In viewing the transaction between the parties, the Court finds that Defendant did not regularly extend consumer credit payable in more than four installments under TILA. Further, Carnes did not extend credit to the Joneses. Defendant did not loan Plaintiffs money; instead, Carnes simply extracted a promise from the Joneses for payments to be made as the work was completed. Regardless, Plaintiffs admit they cannot show any evidence that Defendant has engaged in additional transactions with other consumers as required by TILA. (Pls.' Resp. 14). Thus, Carnes is not a creditor within the meaning of TILA and is entitled to summary judgment.

---

[4] Plaintiffs alternatively argue that Defendant has violated Kentucky law by not notifying Plaintiffs of their right to rescind the contract to the extent not covered by insurance premiums. (Pls.' Resp. 5). The Plaintiff admits, however, that Kentucky law provides no "consequences" for failing to give notice. (Pls.' Resp. 5 (citing KRS 367.622)). Instead, Plaintiffs argue that TILA is meant to apply to roofing contracts such as the one in this case. Plaintiffs again cite no case law to support this position, and the Court declines to make this inference.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (DN 12) is **DENIED**, and Defendant's Motion for Partial Summary Judgment (DN 11) is **GRANTED**.

**Greg N. Stivers, Judge**
**United States District Court**
January 15, 2016

cc: counsel of record